IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Odell Parker; Ruth Parker; Larry Southern; Roy Southern; Yvonne Harris; and Barbara Patterson, individually and on behalf of others similarly situated in the State of South Carolina, | C/A No. 0:11-cv-01800-JFA |
| Plaintiffs, | |
| vs. | **ORDER DENYING CLASS CERTIFICATION** |
| Asbestos Processing, LLC; Richard H. Bishoff, PC; Richard H. Bishoff; John M. Deakle; A. Joel Bentley; A. Joel Bentley Law Office; William R. Couch; Couch Law Firm; David O. McCormick; Cumbest, Cumbest, Hunter & McCormick; Crymes G. Pittman; Pittman, Germany, Roberts & Welsh, LLP; John Michael Simms; and Lawyer John Doe and Jane Doe, | |
| Defendants. | |

## I.    INTRODUCTION AND BACKGROUND

This matter is before the court on Plaintiffs' motion for issue certification under Rule 23(c)(4) of the Federal Rules of Civil Procedure for a class consisting of approximately 15,896 South Carolinians.

For the reasons which follow, the Court will deny the motion. Although the Plaintiffs' threshold issues could arguably meet all of the prerequisites of Rule 23(a)(1)–(4), and the

1

predominance requirement of Rule 23(b)(3), the Court nevertheless finds that a class action, under the unique circumstances presented in this controversy, is not "superior" to other available methods for fairly and efficiently adjudicating the controversy. The Plaintiffs thus fail to satisfy the second prong of Rule 23(b)(3), and the Court will therefore deny the motion.

Plaintiffs and the purported class members[1] allege that they sustained injuries from exposure to asbestos during their employment, primarily at various South Carolina manufacturing plants. According to the original complaint in this action, two attorneys, Richard Bishoff (of Georgia) and John Deakle (of Mississippi) solicited a large number of South Carolina residents as asbestos tort plaintiffs,[2] primarily through newspaper

---

[1] Plaintiffs propose the following amended class definition, to which Defendants have not objected to at this time:

> All persons identified as South Carolina clients on document number Deakle 00920, who pursuant to a Contract of Representation paid Defendants a legal fee for obtaining a financial recovery on a claim arising from "exposure to asbestos-related materials" and also pursuant to the Contract of Representation were not "advise[d]" about "any type of claim for compensation pursuant to the Georgia Workers' Compensation Act or any other workers' compensation act." The time period for the class is July 27, 2000 through July 25, 2011, the date the class action complaint was filed.

> Excluded from the class are those South Carolina claimants who received benefits under the South Carolina Workers' Compensation Act as a result of their occupational exposure to asbestos. Also excluded from the class are those South Carolina claimants whose third-party asbestos claims arose from their employment by or through the federal government.

[2] Plaintiffs' refer to the claims asserted by Bishoff and Deakle as "asbestos trust" claims because ultimately the claims were made against various trusts that the asbestos manufacturers had created in bankruptcy. The claims were, however, tort claims and the court will thus refer to them as such.

advertisements and the use of paralegals to sign up plaintiffs *en masse*. Although all the 15,896 plaintiffs represented by Bishoff and Deakle are South Carolina residents, the tort claims were filed in Mississippi state court—the parties taking advantage of Mississippi's liberal venue and joinder statutes. Most, but not all, of those claims have been settled.

Since this action was initiated in 2011, the complaint has been amended several times to, among other things, add new named plaintiffs; delete certain named plaintiffs; and, most importantly, to add numerous Mississippi attorneys as defendants.

The addition of the new attorney-defendants occurred after the Plaintiffs discovered that attorneys Bishoff and Deakle had associated many of their Mississippi colleagues as co-counsel via "joint venture agreements."[3] According to defense counsel in this case, these new attorneys were added as defendants because of ongoing relationships they had with insurance adjusters representing the various companies that manufactured asbestos during the relevant time period.

Notwithstanding the fact that the Plaintiffs had never met any of these new Mississippi attorneys, most, but not all of them, were listed on the complaints as attorneys of record for the Plaintiffs in the Mississippi asbestos tort claims litigation.

Many of these newly-added Mississippi attorneys filed motions in this Court to dismiss for lack of personal jurisdiction, which resulted in an extensive delay in this case. Ultimately, the Court held that jurisdiction was proper over some, but not all, of these newly-

---

[3] According to the Plaintiffs, there existed as many as 28, and possibly 42, separate joint ventures the attorneys representing the Plaintiffs.

3

added attorneys.  The addition of these new attorneys made what was already a complex case even more so, and, ultimately, made a class action vehicle less viable.

Finally, it should be noted that at least some of the potential class members are still represented by some of the Defendants who are attorneys.  This adds a significant procedural impediment to certifying a class that would include those plaintiffs who still maintain an attorney-client relationship with some of the Defendants in this case.

In the legal malpractice and breach of fiduciary duty action before this Court, Plaintiffs allege that Defendants failed to advise Plaintiffs to take steps to protect their potential workers' compensation claims against their employers.   For example, Plaintiffs allege that Defendants did not advise their clients about the legal alternatives available under South Carolina law, that is, (1) proceed solely with a claim against the asbestos trusts; (2) proceed solely with a workers' compensation claim; or (3) proceed with both claims simultaneously.   Further, Plaintiffs allege that Defendants failed to advise them of the consequences under South Carolina law of proceeding with only asbestos tort claims.

Defendants adamantly deny any misconduct or breach of any duty.   In short, Defendants maintain that Plaintiffs were given unambiguous disclosures and advisories which stated that Defendants were not representing them in any workers' compensation claims.  In particular, Defendants contend that a clause in the contract of representation made it clear that the attorneys were being employed to bring asbestos tort claims only—not workers' compensation claims.

4

Distilled to its essence, Plaintiffs contend in this lawsuit that it was not enough for the contract of representation to simply disclaim representation for workers' compensation purposes. Rather, it is argued, the attorneys in the Mississippi actions had an affirmative duty to tell their clients that, by going forward solely with tort claims, they were forever waiving the right to assert any South Carolina workers' compensation claims they might have had at the time.

## II.      MOTION FOR ISSUE CERTIFICATION

The present action was filed in July 2011. Due to a number of procedural delays (most notably, an early, unsuccessful attempt to resolve the "case within a case" issue; several amendments to the complaint; several complex personal jurisdiction motions; a host of discovery disputes; and generous extensions of time for briefings requested by both sides), the current motion for class certification was not filed until April 25, 2014, and was not fully briefed until October 22, 2014. Extensive oral argument on the motion for class certification was heard by this Court on November 20, 2014.

In their motion, Plaintiffs seek class certification on what they contend are fourteen common issues, noted below, under the "issue certification" concept derived from Fed. R. Civ. P. 23(c)(4) which provides that:

> When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

Plaintiffs seek issue certification for what they assert are the following common issues:

1.      Whether Defendant lawyers had an attorney-client relationship creating professional duties owed by them to South Carolina asbestos trust claimants.

2.      Whether Defendant lawyers had an attorney-client relationship creating fiduciary duties, including duties of loyalty and disclosure, owed by them in favor of South Carolina asbestos trust claimants.

3.      Whether Defendant lawyers used uniform Contracts of Representation in signing up their South Carolina clients.

4.      If so, whether the uniform Contracts of Representation included (a) reasonably adequate information and explanation to the South Carolina clients about the material risks of proceeding with an asbestos bankruptcy trust claim; and (b) reasonably available alternatives to proceeding with an asbestos bankruptcy trust claim.

5.      Whether Defendant lawyers used a uniform "Information Regarding Your Asbestos Claim" form when signing up South Carolina clients.

6.      If so, whether the uniform "Information Regarding Your Asbestos Claim" form included (a) reasonably adequate information and explanation to the South Carolina clients about the material risks of proceeding with an asbestos bankruptcy trust claim; and (b) reasonably available alternatives to proceeding with an asbestos bankruptcy trust claim.

7.      Whether Defendant lawyers uniformly failed to provide their South Carolina clients with candid advice based on their exercise of independent professional judgment on their clients' behalf.

8.      Whether during the uniform intake process the Defendant lawyers failed to explain the matter to their South Carolina clients to the extent reasonably necessary to permit the clients to make informed decisions regarding the scope of their representation.

9.      Whether the Defendant lawyers failed to obtain their South Carolina clients' informed consent to limiting the scope of the lawyers' representation of them, to exclude legal advice and representation in connection with workers' compensation laws.

10.     Whether the failure to provide informed consent was a breach of the Defendant lawyers' professional duties owed to the South Carolina clients.

11.     Whether the failure to provide informed consent was a breach of the Defendant lawyers' fiduciary duties, including duties of loyalty and disclosure, owed to the South Carolina clients.

12.     Whether Defendants' uniform conduct was a breach of the professional duties of care owed to the South Carolina Clients.

13.     Whether the breach of the fiduciary duties, including duties of loyalty and disclosure, was clear and willful.

14.     Whether there is sufficient, uniform evidence to support the equitable remedy of disgorgement.

It can readily be seen that there is significant overlap and duplication in the fourteen "Common Issues" posited by the Plaintiffs.  In this Court's opinion, the fourteen issues basically set out only three fact questions and one legal question.[4]  They are:

(1)     Whether the original form contract of representation or a later, more detailed contract were uniform or similar enough to allow the Plaintiffs to avoid an individualized inquiry into each contract of representation;

(2)     Whether the Defendants provided any additional advice—written or oral—regarding workers' compensation at the time the contract of representation was signed;

(3)     Whether the Plaintiffs had an attorney-client relationship with any of the attorneys who purported to represent them in Mississippi (excluding, of course, Bishoff and Deakle, who unquestionably did represent all Plaintiffs); and

---

[4]  For ease of reference, these four issues will be referred to throughout this order as the "Common Issues."

(4)     Assuming the Plaintiffs received nothing more than the disclaimer mentioned above regarding workers' compensation, whether the attorneys committed malpractice or breached any fiduciary duties because of their failure to fully inform the Plaintiffs of their rights.

Attached to Plaintiffs' motion is a proposed plan to take this matter to trial. In Phase I, Plaintiffs intend to prove the Commons Issues.[5] In Phase II, Plaintiffs propose that if the jury decides the Common Issues in favor of the Plaintiffs, the same jury would decide the compensatory damages to be awarded to the named Plaintiffs for the legal malpractice action. The Plaintiffs also request that the jury determine whether there is sufficient, uniform evidence to support the equitable remedy of disgorgement of the attorneys fees received by the Defendants.

Finally, in Phase III, the Plaintiffs propose individual proximate cause and damages trials for class members, before separate juries. Necessarily included in the proximate cause and damages inquiry is the critical—and fact dependent—question of whether a class member had, at the time, a viable workers compensation claim. Plaintiffs suggest that this Phase III would also resolve individual defenses raised by Defendants. Additionally, the Plaintiffs propose that the Phase III juries would be instructed that they are bound by the results of the Phase I trial on the Common Issues.

---

[5] The elements of a South Carolina legal malpractice claim are (1) the existence of an attorney-client relationship; (2) breach of a duty by the attorney; (3) proximate causation; and (4) damage to the client. *Holy Loch Distributors, Inc. v. Hitchcock*, 531 S.E.2d 282, 285 (S.C. 2000). The Court observes that the parties occasionally shorthand Phase I as the phase for proving liability. However, it is important to note that under the trial plan, proximate causation and damages are to be tried in Phase III, the individual trials. Thus, Phase I would not prove Defendants' liability, but only "common issues" as to liability.

Essentially, Plaintiffs are advocating a partial class action concept whereby common issues are adjudicated, followed by adjudication of the named Plaintiffs' claims, and then a third stage wherein close to 16,000 individual juries would determine proximate cause and damages for the individual class members.

## III.    REQUIREMENTS FOR CLASS CERTIFICATION

### A.    General Application

As the Supreme Court has noted on more than one occasion, "the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S.Ct. 1426 (2013) (internal quotations omitted).

The burden of establishing class status is on the proponents of class certification, here the Plaintiffs. *See Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981). To satisfy this burden, the proponents must first establish that the proposed class satisfies the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Those prerequisites are (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.

Generally, the proponents must also establish that the class satisfies one or more of the three subsections of Rule 23(b). Here, Plaintiffs rely on Rule 23(b)(3), together with Rule 23(c)(4), in their attempt to maintain an issue class action.

In assessing the sufficiency of Plaintiffs' proffered proof for class certification purposes, the court "should make whatever factual and legal inquiries are necessary under

Rule 23.... And if some of the considerations ... overlap the merits ... then the judge must make a preliminary inquiry into the merits." *Szabo v. Bridgeport Machines*, *Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (quoted with approval in *Gariety v. Grant Thornton*, *LLP*, 368 F.3d 356, 366 (4th Cir. 2004)).

In resolving a motion for certification, the court must remember that the class action device "was an invention of equity ... mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1751 at 7 (3d ed. 2005) (hereinafter "Wright & Miller § ____") (quoting *Montgomery Ward & Co. v. Longer*, 168 F.2d 182, 187 (8th Cir. 1948)). Despite significant revisions, Rule 23

> has not lost its remedial character and continues to have as its objectives the efficient resolution of the claims or liabilities of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and the establishment of an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits.

Wright & Miller § 1754 at 55.

Class actions are meant to conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). Therefore, district courts should "give Rule 23 a liberal rather than a restrictive

10

construction, adopting a standard of flexibility in application which will in the particular case 'best serve the ends of justice for the affected parties and ... promote judicial efficiency.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citing *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989) *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).

### B.    Requirements of Rule 23(a)

The court may certify an issue class only if the proposed class satisfies all four criteria set forth in Rule 23(a)(l)–(4):

> (a)    Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all only if
>
>> (1)    the class is so numerous that joinder of all members is impracticable [Numerosity];
>>
>> (2)    there are questions of law or fact common to the class [Commonality];
>>
>> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class [Typicality]; and
>>
>> (4)    the representative parties will fairly and adequately protect the interests of the class [Adequacy].

Although numerosity is not in dispute here, Defendants assert that the Plaintiffs cannot satisfy the remaining criteria of commonality, typicality, and adequacy.  The Court will address these criteria in turn.

**Commonality.**  Commonality requires that there are questions of law or fact common to the class.  FED. R. CIV. P. 23(a)(2).  A question is not common if "its resolution turns on

11

a consideration of the individual circumstances of each class member." *Parks Auto. Grp*, *Inc. v. Gen. Motors Corp.*, 237 F.R.D. 567, 570 (D.S.C. 2006) (citing Wright & Miller § 1763). The commonality requirement of Rule 23(a)(2) "does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist." *Central Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C.), *aff'd* 6 F.3d 177 (4th Cir. 1993); *see Wal-Mart Stores*, *Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (A single common question satisfying this criterion will suffice.); *Holsey v. Armour & Co.*, 743 F.2d 199, 216–17 (4th Cir. 1984) (there must be at least one material fact or at least one legal issue shared by each class member); *Jacob v. Duane Reade*, *Inc.*, 293 F.R.D. 578, 592 (S.D.N.Y. 2013) (finding that proposed class members' injuries stemmed from one, common harm and certifying a Rule 23(c)(4) class); Wright & Miller § 1763 ("Rule 23(a)(2) ... does not require that all the questions of law and fact raised by the dispute be common"). Thus, some courts have stated that the commonality requirement is a "low hurdle easily surmounted." *Scholes v. Stone*, *McGuire*, *& Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (distinguishing the predominance requirement of Rule 23(b)(3)) (quoted in *Thorn v. Jefferson-Pilot Life Ins. Co.*, No. C.A. 3:00-2782-22, 2004 WL 5745993, at *6 (D.S.C. Dec. 2, 2004) *aff'd and remanded*, 445 F.3d 311 (4th Cir. 2006)).

The Fourth Circuit has characterized Rule 23(a)(2)'s commonality standard as less demanding than the corresponding predominance requirement of Rule 23(b)(3). *Gariety*, 368 F.3d at 362. Nonetheless, the Fourth Circuit appears to place more weight on the degree of commonality required under Rule 23(a)(2) stage than do other courts, at least in some cases.

*See generally Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 340–43 (4th Cir. 1998) (appearing to apply a more stringent standard under Rule 23(a)(2)); *Stott v. Haworth*, 916 F.2d 134, 143 (4th Cir. 1990) (finding commonality and typicality not satisfied where "[t]he only question common to each member of the class is whether ... his or her position was one that was subject to patronage dismissal" and where resolution of that question would not be dispositive of the action).

Defendants challenge Plaintiffs' showing of commonality by urging a myriad of individual questions exist that "do not generate common answers because of dissimilarities among class members" and Defendants.    For example, Defendants suggest the question of whether Defendants have an attorney-client relationship with a class member is not a common issue with regard to certain Defendants.    Defendants' arguments overlooks that the commonality requirement in Rule 23(a)(2) refers to "questions of law or fact common to the class," and that differences among defendants should not be a major concern in the Rule 23(a)(2) analysis.

Defendants make additional arguments that Plaintiffs cannot satisfy the commonality requirement because of other individualized inquiries.    Instead of addressing the issue of commonality alone, Defendants address the commonality within the predominance context. Therefore, the court will address a majority of Defendants' concerns regarding individualized inquiries where appropriate—within the Rule 23(b)(3) analysis.[6]

---

[6] Defendants also argue that the determination of the Common Issues does not drive the resolution of the litigation.  The court intends to address this argument under the superiority requirement found in Rule 23(b)(3).

Returning to the Rule 23(a)(2) analysis, common legal and fact questions central to this litigation include whether Defendants practice of using uniform documents with minimal disclosures regarding workers' compensation and only using paralegals (and no attorneys) to sign retainer agreements with asbestos tort claimants *en masse* resulted in any breach of any duty allegedly owed to Plaintiffs by Defendants. Where the injuries complained of by named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376–77 (2d Cir. 1997) (*per curiam*) (commonality satisfied with respect to putative class of children who would be at risk of abuse or neglect while in custody of city administration for children's services where injuries to children were alleged to have arisen "from a unitary course of conduct by a single system").

For the foregoing reasons, the commonality requirement has been met.

**Typicality.** Rule 23(a)(3) requires the representative's claims or defenses be typical of the class. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard*, 155 F.3d at 340 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The United States Supreme Court "has repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 338 (citing *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Essentially, the typicality requirement ensures that "only those plaintiffs … who can advance the same

factual and legal arguments may be grouped together as a class." *Id.* at 340 (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997)).

The typicality requirement is met if a plaintiff's "claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Comer v. Life Ins. Co. of Ala.*, No. C/A 0:08-228-JFA, 2010 WL 233857, at *4 (D.S.C. Jan. 14, 2010) (quoting *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 99 (M.D.N.C. 1993)). Complete identity between the claims constituting each individual action is not required. *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563–64 (E.D. Va. 1999) (the defendant utilized uniform documents and a single plan to defraud plaintiffs, which supports the finding that the claims of the named plaintiffs would be typical of the class members).

While the claims of the class members need not be identical to satisfy Rule 23(a)(3), significant differences may preclude certification. *See Broussard*, 155 F.3d at 340–44 (finding five areas of adversity precluded satisfaction of the commonality and typicality requirements).[7]

---

[7] In *Broussard*, the Fourth Circuit described the class as "a hodgepodge of factually as well as legally different plaintiffs, ... that should not have been cobbled together for trial." 155 F.3d at 343 (reversing certification of a class of franchisees in a contract and fraud based action against their common franchiser). Particularly, the court found five significant variations in the class member's factual and legal arguments, which made "it clear that this case failed to present common questions of fact or law ... and that plaintiffs' claims were anything but typical of the claims of the class." *Id.* at 340 (internal citations omitted). One of the areas of variation related to "tolling the statute of limitations" as to which the Fourth Circuit held that "each of plaintiffs' claims depends on individualized showings that are non-typical and unique to each" putative class member. *Id.* at 342. The Fourth Circuit continued and explained that the "trial court's analysis of equitable tolling should ... have taken the form of individualized inquiry into what each franchisee knew ... and when he

Defendants assert that Plaintiffs' Common Issues are not amenable to class treatment and preclude finding typicality within the proposed class. Defendants argue that individual findings must be undertaken to determine whether Plaintiffs are disabled. They also contend that dissimilarities exist among Plaintiffs concerning their understanding of the intake process documents. Defendants assert that individualized findings would be necessary to pursue their statute of repose defenses, which would also prevent a finding of typicality.

Under Plaintiffs' proposed trifurcated trial plan, whether or not each Plaintiff is disabled would be determined during the individual trials in Phase III. Based on this proposed trial plan, Plaintiffs acknowledge that certain questions within the entire legal malpractice claim and breach of fiduciary duty claim are not typical among class members. Therefore, Plaintiffs have attempted to carve out atypical questions to be addressed in individual trials, after the partial class action portion (Phase I) was complete. Notwithstanding this, Defendants remaining arguments are better suited to be analyzed under the predominance analysis of Rule 23(b)(3).

Returning to the typicality requirement, the named Plaintiffs allege that they and the purported class members all suffered damages because of uniform misconduct by the Defendants, that is, enlisting class members *en masse* to claim money against the asbestos trusts. If a jury determined that this course of conduct breached a duty owed to the Plaintiffs, the court would necessarily find that other class members would have suffered the same

---

knew it." *Id.* Ultimately, the Fourth Circuit held that the trial court had improperly allowed plaintiffs "the practical advantage of being able to litigate not on behalf of themselves but on behalf of a 'perfect plaintiff' pieced together for litigation." *Id.* at 344.

breach since the record indicates that the intake process basically was uniform throughout the class period. Accordingly, the Court finds that the named Plaintiffs' Common Issues surrounding the intake process are typical of those in the purported class and must be answered to determine Defendants' liability for legal malpractice or a breach of fiduciary duty. Under these circumstances, Plaintiffs have satisfied the element of typicality.

**Adequacy of Representation.** Due process requires that absent class members be afforded adequate representation before they are subject to entry of a binding judgment. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940). Thus, Rule 23(a)(4) requires not only that class counsel be adequate, but also that "the representative parties" be able and so situated that they will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Determining adequacy of representation, therefore, requires the Court to determine: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the entire class. *Thorn*, No. C.A. 3:00-2782-22, 2004 WL 5745993, at *7 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Conflicts that are merely hypothetical or speculative will not defeat certification. *Gunnells*, 348 F.3d at 430 (noting that, to defeat certification, conflicts "must be more than merely speculative or hypothetical," quoting 5 MOORE'S FEDERAL PRACTICE § 23.25[4][b][ii] (2002)). Nonetheless, a class may not be certified where actual conflicts are reasonably anticipated. *See Broussard*, 155 F.3d at 337–38 (finding conflicts of interest

17

between different groups of class members to preclude class certification under Rule 23(a)(4)).

Defendants argue that there is an inherent conflict between the interests of the named Plaintiffs and the purported class because the class consists of individuals still represented by Defendants who have an ongoing interest in having Defendants continue to pursue their claims against the asbestos trusts.

The Court agrees that this is an actual conflict of interest between the named Defendants and at least some of the purported class. Although the number of Plaintiffs who still maintain an attorney-client relationship with some of the Defendants might be relatively small, it is a conflict nevertheless. It is also a conflict that cannot be resolved by resorting to an "opt-in" class, as there appears to be little support for the legitimacy of an "opt-in" class under Rule 23. *Kern v. Siemens Corp.*, 393 F.3d 120 (2nd Cir. 2004) ("[W]e find scant support for the proposition that a court could *ever* certify a class with an 'opt-in' provision during the liability stage of the litigation.") (emphasis in original). Another option—not suggested by the Plaintiffs—would be to amend the class definition so as to specifically exclude those class members who are still represented by Defendants.

The Court need not concern itself with this conflict, however, because, as noted above, the Court has ultimately determined that a class action should not be certified for other reasons.

As to vigorous prosecution, the adequacy of Plaintiffs' counsel is "presumed in the absence of specific proof to the contrary." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 330–31

18

(D.S.C. 1991) (quoting *Falcon v. General Tel. Co.*, 626 F.2d 369, 376 n.8 (5th Cir. 1980), *vacated on other grounds*, 450 U.S. 1036 (1981)). Courts generally hold that the "employment of counsel assures vigorous prosecution." *Id.* Rule 23(g) requires courts to assess (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions or other complex litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

The named Plaintiffs have retained experienced and knowledgeable lawyers who have already committed substantial resources to the case. Plaintiffs' counsel have appeared in this Court on numerous occasions and have always proved to be well-prepared, knowledgeable, and vigorous in representing their clients and have discharged their professional obligations in an exemplary manner.

In summary, for purposes of the Rule 23(a) analysis, the Court finds that the Plaintiffs have met the requirements of commonality and typicality. And, assuming the adequacy prong could be satisfied by re-defining the class, adequacy of representation is satisfied as well.

**C.    Interplay between Rule 23(b)(3) and Rule 23(c)(4)**

As the Plaintiffs have requested certification under Rule 23(c)(4), the Court must address the relationship between the predominance requirement under Rule 23(b)(3) and issue certification under Rule 23(c)(4).

19

Other courts have employed Rule 23(c)(4) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement. *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006). Courts use Rule 23(c)(4) to permit a class action to be maintained "with respect to particular issues," even though each class member may need to separately litigate other issues in the case, under the theory that "the advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured." Wright & Miller § 1790. Thus, "some courts have concluded that even if only one common issue can be identified as appropriate for class treatment, that is enough to justify the application of the provision as long as the other Rule 23 requirements are met." *Id.* (internal citations omitted). Likewise, courts have applied Rule 23(c)(4) to allow a partial class action to go forward, leaving questions of reliance, damages, and other issues to be adjudicated on an individual basis whenever "the court can profitably isolate the class issues under Rule 23(c)(4). *Id.* (internal citations omitted).

The Seventh, and Ninth Circuits[8] have followed *Nassau County* and concluded that only the certified issues need to meet the predominance requirement.[9] The Fifth Circuit has, however, reached the opposite conclusion and adopted a strict application of Rule 23(b)(3) in connection with Rule 23(c)(4). *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996). In *Castano*, the district court certified a class to resolve general liability issues, anticipating that issues such as causation and damages would be determined on an individual basis. *Id.* at 738–39. The Fifth Circuit reversed, finding predominance was not satisfied. *Id.* at 752. In a footnote, the court stated that Rule 23(c)(4) cannot be used to avoid Rule 23(b)(3)'s predominance requirement and that it was simply a "housekeeping rule." *Id.* at 745 n.21. The court did not look to the language of the rule, or to its history, instead justifying its holding by the *ipse dixit* that drafters of the rule "could not have … intended" that Rule

---

[8] *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 221–22 (2d Cir. 2006); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (7th Cir. 2008), *abrg. in part on other grounds by Bridge v. Phoenix Bond & Indemn, Co.*, 533 U.S. 639 (2008); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); *see also In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 608, 613 (D. Kan. 2012) (predicting that the Tenth Circuit would follow the majority and hold that the requirements of 23(a) and (b) need only be satisfied as to the issues certified under 23(c)(4)). The major civil procedure and class action treatises concur. WILLIAM B. RUBENSTEIN, ALBA CONTE, AND HERBERT B. NEWBERG, 6 NEWBERG ON CLASS ACTIONS § 18:7 (4th ed. 2012) ("Even cases which might not satisfy the predominance test when the case is viewed as a whole may sometimes be certified as a class limited to selected issues that are common, under the authority of Rule 23(c)(4).").

[9] Refusing to "join[] either camp in the circuit disagreement" the Third Circuit has instead attempted to reframe the issue by avoiding any discussion of predominance and instead adopting the multi-factor approach in the ALI's Principles of Aggregate Litigation. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011). Plaintiffs argue that by adopting a test that does not include predominance as an element, the Third Circuit has necessarily aligned itself with the circuits rejecting the proposition that predominance of common issues as to the entire lawsuit is a prerequisite for certification of an issue class.

21

23(c)(4) could be used when common issues did not predominate in the case as a whole because "the result would be automatic certification in every case where there is a common issue." *Id.*

Although the Fourth Circuit has not directly addressed this dispute and the relationship between Rule 23(b)(3) and Rule 23(c)(4), it has encouraged courts to "promote the use of the class device and to reduce the range of disputed issues" by taking "full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case and, if such separate issues predominate sufficiently, to certify the entire controversy." *In re A.H. Robins*, 880 F.2d at 740.

Moreover, the Fourth Circuit has addressed the interplay between Rule 23(c)(4) and the predominance requirements of 23(b)(3) in cases in which a plaintiff seeks to certify some, but not all of the "causes of action" that make up the lawsuit. *Gunnells*, 348 F.3d at 438. In *Gunnells*,[10] the Fourth Circuit held that a plaintiff who seeks to certify only certain causes of action need not demonstrate that common issues predominate as to the entire lawsuit. *Id.*

---

[10] Many commentators and a few courts have regarded *Gunnells* as positioning the Fourth Circuit in line with the Second, Seventh, and Ninth Circuits. *See Gates*, 655 F.3d at 272 (citing to *Gunnells* to support the statement that other courts "have allowed certification of issue classes even if common questions do not predominate for the cause of action as a whole); *see also* Jenna C. Smith, *"Carving at the Joints": Using Issue Classes to Reframe Consumer Class Actions*, 88 WASH. L. REV. 1187, 1213 (2013); Jenna G. Farleigh, *Splitting the Baby: Standardizing Issue Class Certification*, 64 VAND. L. REV. 1585, 1614 (2011); Michael J. Wylie, *In the Ongoing Debate Between the Expansive and Limited Interpretations of Fed. R. Civ. P. 23(c)(4)(a), Advantage Expansivists!*, 76 U. CIN. L. REV. 349, 370 (2007). *But cf. Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 77 (E.D.N.C. 2008) ("Although the Fourth Circuit appeared to address this issue in *Gunnells*, its analysis is unclear. Specifically, the *Gunnells* court appeared to hold that a district court may certify individual *causes of action*, not individual *issues*, for class treatment.") (emphasis in original).

22

In reaching its decision, the court focused on the language and structure of the rule, explaining that if Rule 23(c)(4) could only be used when the lawsuit as a whole already satisfied the predominance requirements, Rule 23(c)(4) would be "without any practical application, thereby rendering it superfluous." *Id.* at 439 (citing *In re Tetracycline Cases*, 107 F.R.D. 719, 726–27 (W.D. Mo. 1985) ("If the requirement under Rule 23(c)(4)(A) was that ... one or more issues 'predominate' in the usual Rule 23(b) sense, when compared with all the issues in the case, there would obviously be no need or place for Rule 23(c)(4)(A).")) A contrary interpretation "would require a court considering the manageability of a class action—a requirement for predominance under Rule 23(b)(3)(D)—to pretend that subsection (c)(4)—a provision specifically included to make a class action more manageable—does not exist until after the manageability determination is made." *Id.* This same reasoning applies to whether common issues could be certified under 23(c)(4) without demonstrating predominance as to the case as a whole. There is no textual basis for treating individual causes of action differently than common issues given that the rule makes no such distinction: "When appropriate, an action may be brought or maintained as a class action *with respect to particular issues*." Fed. R. Civ. P. 23(c)(4) (emphasis added).

Under *Gunnells*, which appears to follow the practice of the Second, Seventh, and Ninth Circuits, this Court holds that it may use Rule 23(c)(4) to certify a class as to an issue regardless of whether the claim as a whole satisfies the predominance test in Rule 23(b)(3).

**D.     Requirements of Rule 23(b) in combination with Rule 23(c)(4)**

23

In order to achieve class certification pursuant to Rule 23(b)(3), Plaintiffs must (1) satisfy the four requirements of Rule 23(a), outlined above; (2) demonstrate that common "questions of law or fact" predominate over "any questions affecting only individual members"; and (3) establish that the issue class action mechanism is "superior to other available methods for the fair and efficient adjudication of the controversy." *See* FED. R. CIV. P. 23(b)(3).

**Predominance**.  As noted above, there are clearly certain questions that would be common to the issue class.  Naturally, when a court chooses to limit class certification only to certain common issues under Rule 23(c)(4), those issues presumably predominate and seemingly satisfy the first element of Rule 23(b)(3). *See Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 241 (S.D.N.Y. 2010); *Leib v. Rex Energy Operating Corp.*, No. 06 Civ. 802, 2008 WL 5377792, at *10 (S.D. Ill. Dec. 19, 2008); *accord* WILLIAM B. RUBENSTEIN, ALBA CONTE, AND HERBERT B. NEWBERG, 2 NEWBERG ON CLASS ACTIONS § 4:23 (4th ed. 2012) ("When a court decides to limit a class action with respect to particular common issues only, such limitation will necessarily afford predominance as to those issues.").  However, individualized inquiries within the Common Issues may still predominate despite meeting the commonality requirement of Rule 23(a).

*Choice of Law.*  A threshold consideration under the predominance requirement is the law to be applied to the Common Issues.  Federal courts sitting in diversity apply the choice of law rules of the forum in which the court sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941).  This Court is therefore required to apply South Carolina's choice

of law rules. When the law of multiple states is to be applied, predominance is difficult to achieve because of the significant manageability problems that can arise. *See In re Digitek Products Liab. Litig.,* 2010 WL 2102330, at *7 (S.D. W.Va. May 25, 2010) (determining that plaintiffs could not show that common questions of law predominate when various laws had not been identified and compared). As, the principal commentators on the Federal Rules put it,

> [a]s a matter of general principle, the predominance requirement of Rule 23(b)(3) will not be satisfied if the trial court determines that the class claims must be decided on the basis of the laws of multiple states.... The application of multiple state laws to the action works to defeat predominance because the legal issues no longer pose a common question.... [T]he district court is required to determine which law will apply before making a predominance determination and plaintiff has the burden to show that variations in state law do not defeat predominance.

Wright & Miller § 1780.1.

In proving which law applies, the Plaintiffs' burden includes providing the court with a survey critically analyzing the differences in each state's laws and discussing how the court could deal with these variations. *See Gariety*, 368 F.3d at 362. Here, the Plaintiffs have provided a survey, including a chart, of South Carolina, Georgia, and Mississippi's applicable laws, and maintain that no conflict exists as to the law to be applied to the Common Issues. Further, Plaintiffs have presented compelling analysis that South Carolina law would likely apply.

The claims for which Plaintiffs seek issue certification are torts. *See Moore v. Moore*, 599 S.E.2d 467, 475 (S.C. Ct. App. 2004) (holding "a cause of action for breach of fiduciary

duty sounds in tort rather than in contract").  Plaintiffs maintain that under South Carolina choice of law rules as to torts, the applicable law is determined by the place where the Plaintiffs sustained their damages and not the place where the Defendants were located when they allegedly failed to provide the necessary legal advice.  Plaintiffs rationalize that Defendants' liability for legal malpractice and breach of fiduciary duty is governed by South Carolina law because Plaintiffs and class members suffered their alleged financial damages in South Carolina.  *Bannister v. Hertz Corp.*, 450 S.E.2d 629, 630 (S.C. Ct. App. 1994) ("Under South Carolina conflict of law principles, the substantive law governing a tort action is determined by the state in which the injury occurred."); *see also Lister v. NationsBank of Delaware, N.A.*, 494 S.E.2d 449, 455 (S.C. Ct. App. 1997) (holding as to claim for fraudulent misrepresentation that "[t]he place of the wrong is not where the misrepresentations were made but where the plaintiff, as a result of the misrepresentation, suffered a loss."))].  The place of injury is also referred to as the place where the last act required to complete the tort occurred.  *See* RESTATEMENT (FIRST) OF CONFLICT OF LAWS § 377 (1934) (stating that the "place of wrong is the state where the last event necessary to make an actor liable for an alleged tort takes place").

On the other hand, the Defendants assert that Georgia or Mississippi laws may be applicable because the allegedly deficient legal advice occurred in different states.  Further, Defendants contend that because the class members originally filed claims in Mississippi state court, the ethical rules of Mississippi, not South Carolina, should apply because Mississippi is the location of the tribunal.  Rules of Professional Conduct, Rule 8.5(b), RPC,

Rule 407, SCACR  ("In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct . . . shall be[,] ... for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise. . . ."))].

In the present case, damages are the last event necessary to make the Defendants liable under the legal malpractice claim.  Plaintiffs maintain that the only damages recoverable for legal malpractice claims under South Carolina law are for financial injuries. *Cf. Caddel v. Gates*, 327 S.E.2d 351, 353 (S.C. Ct. App. 1984) ("We adopt the almost universal rule that damages for mental anguish are not recoverable in these cases, regardless of whether they allege causes of action for tort, breach of contract, breach of warranty or agreements to insure; and we so hold.").  As a result of Defendants' alleged misconduct, Plaintiffs could not pursue workers' compensation benefits.  That injury was inflicted in South Carolina—where the Plaintiffs and class members live and would have received their workers' compensation checks and medical benefits.  This issue class action is limited to South Carolinians, therefore, the place of injury or damage is here, and South Carolina law applies.  It matters not whether Defendants' acts or omissions occurred in Georgia or Mississippi because each class members' financial losses occurred in South Carolina.

Plaintiffs have thus shown that only South Carolina law applies.  For this reason, the choice of law issue is no impediment to a finding of predominance.

Defendants, citing a recent Supreme Court decision, argue that class certification is not appropriate here because the Plaintiffs' damages are not "capable of measurement on a

27

class-wide basis." *Comcast v. Behrend*, ___ U.S. ___, 133 S.Ct. 1426, 1433 (2013). Defendants point out that Plaintiffs seek two types of damages in this case. First, Plaintiffs contend that they should be compensated in an amount equivalent to the workers' compensation benefits to which they would have been entitled, and, secondly, they seek a disgorgement remedy. The workers' compensation damages are claimed under the Plaintiffs' legal malpractice claim, and the disgorgement remedy is asserted under the breach of fiduciary duty claim.

It should be noted that Defendants vehemently argue that under South Carolina law, there is no separate claim for disgorgement for breach of fiduciary duty; rather, that claim is subsumed within the basic legal malpractice claim. A resolution of that issue will have to await another day, but for present purposes, the Court will simply assume that Plaintiffs might be able to go forward on both damages and disgorgement remedies.

As an initial proposition, the Defendants read too much into the *Comcast* decision. It does not stand for the proposition that all of the Plaintiffs' damages must be *calculated* on a class-wide basis. It merely indicates that the "methodology" for measuring and quantifying damages be the same for all class members so as to satisfy the predominance requirement. *Comcast*, 133 S.Ct. at 1433.

Here, the methodology for both actual damages and, assuming the fiduciary duty claim is viable, disgorgement, is the same for all class members. The mathematical computation of the actual damages, of course, is different. And, the Fourth Circuit has made it clear that Rule 23 "explicitly envisions class actions with . . . individual damage

28

determinations." *Gunnells*, 348 F.3d at 428. The individualized damage determinations would occur, under Plaintiffs' proposed plan, in Phase III of the trifurcated proceedings.

For the foregoing reasons, the Court concludes that the predominance requirement of Rule 23(b)(3) as applied to the issue certification question of Rule 23(c)(4) has been met.

**Superiority**. Having discussed all of the procedural requirements of Rule 23(a), and the predominance requirement of Rule 23(b)(3), the Court now turns to the final, and ultimately pivotal, point on which the motion for issue certification rests. Rule 23(b)(3) requires that this Court make a finding that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) also provides a nonexclusive list of matters pertinent to the superiority inquiry, including subpart (D) "the likely difficulties in managing a class action." Under the scenario proposed by the Plaintiffs, the Phase I trial would be dwarfed by what is to follow. In other words, testimony regarding the intake process; the advice, if any, given to the Plaintiffs in addition to that contained in the contract of representation, and similar issues, will likely be undisputed or, in any event, not time consuming.

Regarding what the Court has enumerated as issue 4, to wit: whether the disclaimer in the contract of representation sufficiently advises the Plaintiffs of their rights regarding workers' compensation (a proposition that—at this point at least—seems to be untenable), the Court, once it has decided this issue in but a single case, is free to employ the time-honored doctrine of collateral estoppel to quickly resolve that issue in subsequent individual cases.

There is another federal procedural device—one that is often under-utilized by many practitioners—that could be employed in future cases to achieve much of the same result as the issue certification proposed here. Future Plaintiffs can use requests for admission under Fed. R. Civ. P. 36 to request that Defendants admit to the accuracy of certain factual statements, some of which appear to be undisputed, and thereby simply and expedite individual trials. And, under Rule 36, if Defendants deny the requests and Plaintiffs are put to their proof, they may recover costs for proving these issues at trial.

Plaintiffs suggest that the proposed tripartite arrangement neatly divides the case into Phase I, which is said to be the liability determination; Phase II, which deals with the damages and disgorgement claims of the named Plaintiffs; and Phase III, dealing with the damages and disgorgement claims of all class members. The division is not as neat as the Plaintiffs would suggest, however: Liability would not actually be determined in Phase I. Rather, only the common threshold issues, some of which bear on the question of liability, would be determined in Phase I. The all-important issue of proximate cause (which is actually a component of liability) is to be preserved for the Phase III trials. As the Court has noted earlier (see *supra* note 5), proximate cause is a component of liability in a legal malpractice action.

The significance of the Phase I trial would easily be overwhelmed by the later evidence—produced in Plaintiffs' proposed Phase III of the trial, regarding proximate cause and damages. Resolution of these issues raises the all-important question of whether a

plaintiff had, at the time, a viable workers' compensation claim. Answering this question would involve a fact-intensive inquiry regarding questions such as:

- Whether the plaintiff had asbestosis caused by his employment;

- Whether the plaintiff was "disabled" for workers' compensation purposes;

- Whether the plaintiff incurred lost wages;

- Whether the plaintiff's claim was timely; and

- Whether the plaintiff "contracted" asbestosis within two years of the last exposure as required by South Carolina law.

To use the vernacular, to allow this case to proceed as a class action for certain simple and relatively straightforward common threshold issues would be to allow the tail to wag the dog. The prospect of litigating, in one case, nearly 16,000 claims of workers' compensation disability issues, as well as damages, with only minimal advantage gained from the resolution of the threshold common issues, leads this Court to conclude, under Rule 23(b)(3)(D) that the "likely difficulties in managing a class action" render the class action device inferior to other available methods in this case.

The present case illustrates, perhaps, why issue certification authorized by Rule 23(c)(4) is little used. As the common issues are narrowed down to make them sufficiently "common," the desirability of issue certification is diminished because, as indicated above, the relatively simple threshold issues can quickly be disposed of in individual trials. This means that the superiority component of Rule 23(b)(3) frequently comes into play to defeat issue certification.

31

Given that there are potential alternative methods for attempting to avoid relitigating an issue in each individual trial—specifically the use of Fed. R. Civ. P. Rule 36 requests for admission, the submission of special verdicts and the possible subsequent use of collateral estoppel (either defensive or offensive), where appropriate—the court is convinced that the issue class action as proposed by Plaintiffs does not meet the superiority requirement of Rule 23(b).

Finally, it bears mention that unlike many class actions where the plaintiffs' claims, if successful, are of minimal value, the individual claims of the putative class members could be significant. This fact, plus the possibility of applying collateral estoppel from decisions in earlier trials (assuming Plaintiffs are successful in their earlier trials), should provide adequate incentive for class members to employ counsel, pay a filing fee, and proceed with a stand-alone action.

Courts that have considered "issue certification" have declined to certify such classes where the prevalence of individual issues is such that limited class certification would do little to increase the efficiency of the litigation. *See McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008) (issue certification would not "materially advance the litigation because it would not dispose of larger issues such as reliance, injury, and damages"); *see also Gates v. Rohm and Haas Co.*, 655 F.3d 255, 274 (3d Cir. 2011) (affirming denial of issue certification where "'resolution of [common] questions leaves significant and complex questions unanswered' … as the common issues … are not divisible from the individual issues"); *In re St. Jude Medical, Inc.*, 522 F.3d 836, 841 (8th Cir. 2008)

("Even courts that have approved 'issue certification' have declined to certify such classes where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation."); *Chicago Teachers Union*, *Local 1 v. Board of Education of City of Chicago*, 2014 WL 2198449, *10 (N.D. Ill. 2014) (declining to certify issue class in employment case because individual issues would predominate over common ones); *Kinney v. Siouxland Urology Associates P.C.*, 2011 WL 796237, *6 (D.S.D. 2011) ("Because of the many individual issues surrounding the numerous theories for relief as are currently pleaded in the second amended complaint, the court finds that certifying various issue classes would not increase the efficiency of the litigation.").

In sum, resolution of these Common Issues will not bring Plaintiffs significantly closer to their goal of recovery, because the core issue as to Plaintiffs claims is whether or not he or she had a viable workers' compensation claim. Certification as to the Common Issues will not materially advance the litigation and will not result in a significant gain of efficiencies; therefore, class certification on the Common Issues is not superior to other available methods for fairly and efficiently adjudicating the controversy.

## IV.    CONCLUSION

After conducting the rigorous analysis required by Rule 23, and giving the Rule a liberal construction as required by case law interpreting the Rule, the Court concludes that the Plaintiffs have failed to meet their burden. The issue certification proposed by Plaintiffs cannot be certified under Rule 23(c)(4), which necessarily precludes certification under Rule 23(b)(3). The motion for issue certification under Rule 23(c)(4) is, therefore, denied.

In light of the fact that this case has been pending for more than three years, the parties shall continue with discovery for the claims of the named Plaintiffs in accordance with the scheduling order issued contemporaneously with this Order, notwithstanding any motion for reconsideration or appeal that may be filed subsequent to this Order.

IT IS SO ORDERED.

January 8, 2015
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

34